```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
BRENT GINGRICH and DONNA GINGRICH,
Individually and as Parents and Legal
Guardians of S.G. (a minor),

                        Plaintiffs,           MEMORANDUM & ORDER
    -against-                                 17-CV-3501(JS)(SIL)

WILLIAM FLOYD SCHOOL DISTRICT; WILLIAM
FLOYD HIGH SCHOOL; BARBARA BUTLER,
individually and in her official
capacity; DR. LORRAINE COCHRANE,
individually and in her official
capacity; PAUL CASIANO, individually
and in his official capacity;
KATHLEEN KEANE, individually and in
her official capacity; School District
Employees "JANE and JOHN DOES 1-10",
individually and in their official
capacities; C.F., a minor; and JOHN
and JANE DOE" FOSTER, individually
and as parents and legal guardians
of minor C.F.,

                        Defendants.
---------------------------------------X
APPEARANCES
```

For Plaintiffs:             Frederick K. Brewington, Esq.
                            Cathryn Harris-Marchesi, Esq.
                            Law Offices of Frederick K. Brewington
                            556 Peninsula Boulevard
                            Hempstead, New York 11550


For Defendants:
WILLIAM FLOYD SCHOOL
DISTRICT, WILLIAM FLOYD
HIGH SCHOOL, BARBARA
BUTLER, DR. LORRAINE
COCHRANE, PAUL CASIANO,
and KATHLEEN KEANE        Howard M. Miller, Esq.
                          Bond, Schoeneck & King, PLLC
                          1010 Franklin Ave., Ste. 200
                          Garden City, New York 11530

SEYBERT, District Judge:

Plaintiffs Brent Gingrich and Donna Gingrich, individually and as parents and legal guardians of minor S.G. (collectively, "Plaintiffs"), bring this action against defendants William Floyd School District (the "District"), William Floyd High School ("WFHS"), Principal Barbara Butler ("Principal Butler"), Assistant Principal Dr. Lorraine Cochrane ("Assistant Principal Cochrane"), Superintendent Paul Casiano ("Superintendent Casiano"), and Assistant Superintendent Kathleen Keane ("Assistant Superintendent Keane" and collectively, the "District Defendants"), as well as minor C.F. and his parents and legal guardians, asserting claims under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment of the United States Constitution and under state law. The District Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiffs oppose the motion. For the reasons below, the motion is GRANTED.

BACKGROUND

Plaintiffs' allegations, taken as true for purposes of this motion, can be summarized as follows. S.G. was a student at WFHS. (Compl., Docket Entry 1, ¶ 12.) On January 7, 2015, S.G. received threatening messages via social media and was approached and verbally assaulted at WFHS by C.F. (Compl. ¶¶ 20-21.) On January 8, 2015, S.G. and her mother, Donna Gingrich, met with

2

Assistant Principal Cochrane regarding the threats. (Compl. ¶¶ 22-23.) Assistant Principal Cochrane "excused and minimized" C.F.'s behavior. (Compl. ¶ 23.)

On January 12, 2015, S.G. and C.F. were in the same art class. (Compl. ¶ 26.) On that day, S.G. was confronted and threatened by C.F. in the hallway outside of the art classroom. (Compl. ¶ 26.) The confrontation was recorded by a security camera. (Compl. ¶ 28.) That evening, Plaintiffs went to Suffolk County police and reviewed video footage of the incident. (Compl. ¶ 29.) After reviewing the video footage, the police filed a field report as C.F. was a minor as of that date. (Compl. ¶ 30.)

The next morning, on January 13, 2015, Plaintiffs met with Assistant Superintendent Keane to discuss the January 12 incident, insisting that C.F. be removed from S.G.'s art class. (Compl. ¶ 31.) Shortly after the meeting, C.F. approached S.G. during lunch. (Compl. ¶ 32.) Principal Butler had security escort S.G. to her office to meet with Assistant Principal Cochrane. (Compl. ¶ 32.) In that meeting, Assistant Principal Cochrane denied that there was any video proof of the January 12 incident between C.F. and S.G. (Compl. ¶ 33.) Further, when S.G. attempted to show Principal Butler the cyber-bullying messages sent by C.F., Principal Butler refused to view the cyberthreats. (Compl. ¶ 33.)

During the afternoon of January 13, 2015, Donna Gingrich went to WFHS to further discuss with Principal Butler and Assistant

Principal Cochrane the January 12 incident and S.G.'s safety. (Compl. ¶ 34.)  At that time, S.G. and C.F. were "detained" in Principal Butler's conference room and were told to "'work it out.'"  (Compl. ¶ 35.)  Regarding the threats of violence being faced by S.G., Principal Butler stated only that "'the girls (S.G. and C.F.) have to learn how to get along.'"  (Compl. ¶ 37.)

On January 14, 2015, Brent Gingrich sent an email to Superintendent Casiano and Assistant Principal Cochrane apprising them of the harassment and intimidation faced by S.G. commencing January 7, 2015, imploring them to take more assertive action against C.F.  (Compl. ¶ 38}.  In response, the District Defendants stigmatized S.G. by having an aide accompany her, rather than monitor and assign an aide to C.F., the aggressor.  (Compl. ¶ 39.)

On February 24, 2015, S.G. was in her art class, from which C.F. had been removed, when C.F. and two other female students entered the classroom.  (Compl. ¶ 40.)  The art class was covered that day by a substitute teacher.  (Compl. ¶ 40.)  C.F. then charged towards and began attacking S.G., after bowling over the teacher.  (Compl. ¶ 41.)  C.F. knocked S.G. to the ground, causing her to hit her head on a file cabinet and to bang her head and arm on the floor.  (Compl. ¶ 41.)  C.F. continued her attack on S.G., repeatedly punching and kicking her in the head.  (Compl. ¶ 41.)  As a result, S.G. lost consciousness and suffered serious injuries.  (Compl. ¶ 42.)

4

Despite the attack and S.G.'s injuries, the District Defendants failed to call either the police or an ambulance to report the attack or to care for S.G.'s injuries. (Compl. ¶ 44.) When S.G. regained consciousness, she attempted to call her mother, Donna Gingrich, eventually messaging her to call the police because C.F. had beaten her. (Compl. ¶ 43.) Donna Gingrich then immediately called the police. (Compl. ¶ 43.) After messaging her mother, S.G. contacted her father, Brent Gingrich, who came to the school. (Compl. ¶ 46.) Because the District Defendants did not call for an ambulance, Brent Gingrich took S.G. for emergency care. (Compl. ¶ 46.)

Suffolk County Police Officers arrived at WFHS and charged C.F. with harassment. (Compl. ¶ 45.) C.F. was then arrested on February 26, 2015 for the February 24 attack upon S.G. (Compl. ¶ 48.) On February 27, 2015, an Order of Protection was issued against C.F. to stay away from S.G., and Defendants were provided notice of the Order of Protection. (Compl. ¶ 49.)

On March 13, 2015, Plaintiffs met with the President of the District's Board of Education, Superintendent Casciano, and Assistant Superintendent Keane to ensure that the District Defendants would abide by the Order of Protection and not allow C.F. on school grounds while S.G. was present. (Compl. ¶ 52.) At this meeting, an agreement was reached that S.G. would receive immediate one-on-one tutoring in order to overcame the time she

missed from school due to the injuries she sustained in the February 24 attack, as well as from difficulties she suffered from speech and motor skills which were affecting her grades. (Compl. ¶ 52.)

Plaintiffs maintain that despite the Order of Protection, C.F. was seen on WFHS grounds on March 24, 2015 while S.G. was attending class. (Compl. ¶ 50.) Plaintiffs believe that the District Defendants sought out and removed C.F. from WFHS grounds before police arrived. (Compl. ¶ 51.) Plaintiffs complain that despite the Order of Protection, S.G. was told to leave an after-school program on April 1, 2015, one that she had been involved in all year, to accommodate C.F., who was expected in the building. (Compl. ¶ 54). In addition, Plaintiffs complain that Superintendent Casiano had failed, as of April 1, 2015, to arrange the agreed-upon tutoring services for S.G. even though it was his responsibility to ensure the facilitation of those services. (Compl. ¶ 53.) Finally, on September 2, 2015, C.F. was again present on WFHS grounds, in Assistant Principal Cochrane's office, in violation of the Order of Protection. (Compl. ¶ 55.) According to Plaintiffs, the District Defendants took no action to remove C.F. from school grounds; instead, the police were notified and they removed C.F. (Compl. ¶ 55.)

Plaintiffs commenced this action on June 9, 2017. (See Compl.) In response to the Complaint, the District Defendants now

move to dismiss.  (See Mot. to Dismiss, Docket Entry 11.)

DISCUSSION

I. Legal Standard

In deciding a FRCP 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Aschroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 679; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a FRCP 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference,

7

any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II. Plaintiffs' Federal Claims

The Complaint contains three counts under § 1983: (1) negligent supervision/failure to supervise, (Compl. ¶¶ 56-67); (2) failure to protect, (Compl. ¶¶ 68-79); and (3) failure to adhere to established policy (Compl. ¶¶ 80-96). The failure to supervise and failure to protect claims are substantially similar; both claims allege that the District Defendants were required pursuant to the Due Process Clause to protect S.G.'s rights to "substantive due process, personal security, bodily integrity, and the right to be protected." (Compl. ¶¶ 60, 70). Thus, the Court construes the failure to supervise and failure to protect claims as alleging that the District Defendants violated S.G.'s substantive due process rights. The Court will address these claims first.

A. Substantive Due Process Claims

To state a claim under § 1983, a plaintiff must show that a person, acting under color of state law, deprived the plaintiff of a federal statutory or constitutional right. See Eagleston v. Guido, 41 F.3d 865, 876 (2d Cir. 1994). The Due Process Clause of the Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due

8

process of law . . . ." U.S. Const. amend. XIV, § 1. As noted, the Complaint alleges that the District Defendants violated S.G.'s substantive due process rights by failure to supervise and failure to protect. (Compl. ¶¶ 56-79.) "The protections of substantive due process are available only against egregious conduct which goes beyond merely 'offend[ing] some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience." Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973) (internal quotation marks omitted; alteration in original)); see also Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) ("Substantive due process protects individuals against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against governmental action that is incorrect or ill-advised.") (internal quotation marks and citations omitted); Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (substantive due process claim requires defendant's conduct be so "extreme or egregious" that it "can be fairly viewed as so brutal and offensive to human dignity that it shocks the conscience.") (internal quotation marks omitted).

There is no dispute that S.G. has a substantive due process right to bodily integrity. See Albright v. Oliver, 510

U.S. 266, 272, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994). Generally, however, a state need not protect an individual from private violence. DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S. Ct. 998, 1004, 103 L. Ed. 2d 249 (1989). Nevertheless, the Second Circuit has recognized two exceptions to the general rule articulated in DeShaney. See Matican v. City of N.Y., 524 F.3d 151, 155 (2d Cir. 2008). Specifically, a state "may owe a constitutional obligation to the victim of private violence" if (1) there is a "special relationship" between the state and the individual; or (2) the state has created the danger. Id.; Campbell v. Brentwood Union Free Sch. Dist., 904 F. Supp. 2d 275, 280 (E.D.N.Y. 2012). In addition to showing that one of these exceptions applies, the plaintiff must also show that the defendant's conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Matican, 524 F.3d at 155 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 1717 n.8, 140 L. Ed. 2d 1043 (1998)).

1. Special Relationship Exception

In DeShaney, the Supreme Court observed that "in certain limited circumstances, the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," DeShaney, 489 U.S. at 198, 109 S. Ct. at 1004, including "incarcerated prisoners and involuntarily committed mental patients," Matican, 524 F.3d at 156. Since DeShaney, the

10

Second Circuit has "focused on involuntary custody as the linchpin of any special relationship exception." Matican, 524 F.3d at 156. In other words, for this exception to apply, the state must have "somehow placed the victim within its custody." Campbell, 904 F. Supp. 2d at 280.

Plaintiffs argue that S.G.'s claim "may be considered analogous to claims by prison inmates and state institutionalized patients." (Pls.' Br., Docket Entry 13, at 10-11.) According to Plaintiffs, public school students are in the state's custody because the state requires that they attend school pursuant to compulsory attendance laws, thereby imposing on the District a duty to protect S.G. "from foreseeable risks of personal injury." (Pls.' Br. at 11.) This Court disagrees, having recently rejected a similar argument in a case involving an assault of a student by another student. See Milton v. Valley Stream Cent. High Sch. Dist., No. 15-CV-0127, 2018 WL 1136909, at *8 (E.D.N.Y. Mar. 1, 2018). Courts in this circuit generally have rejected similar arguments. See HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881, 2012 WL 4477552, at *10 (S.D.N.Y. Sept. 27, 2012) ("'[E]ven in light of compulsory [education] attendance laws, no special relationship is created between students and school districts . . . .'") (quoting Santucci v. Newark Valley Sch. Dist., No. 05-CV-0971, 2005 WL 2739104, at *3 (N.D.N.Y. Oct. 24, 2005) (second alteration in original)); Nieves v. Bd. of Educ., No.

06-CV-0603, 2006 WL 2989004, at *3 (E.D.N.Y. Sept. 15, 2006) ("Compulsory attendance laws for public schools, however, do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school.") (internal quotation marks omitted). S.G.'s relationship with the District does not resemble the relationship between the state and prisoners or between the state and individuals who are involuntarily committed. See Milton, 2018 WL 1136909, at *8. As the overwhelming weight of authority suggests, the special relationship exception does not apply in the school setting. See Drain v. Freeport Union Free Sch. Dist., No. 14-CV-1959, 2015 WL 1014413, at *9 (E.D.N.Y. Jan. 14, 2015) ("A number of courts in the Second Circuit have consistently rejected attempts to impose special relationship status upon public school students.") (collecting cases), R&R adopted in part, 2015 WL 1014451 (E.D.N.Y. Mar. 9, 2015); P.W. v. Fairport Cent. Sch. Dist., 927 F. Supp. 2d 76, 81-82 (W.D.N.Y. 2013) ("Recently, courts in this Circuit and others addressing cases of peer-on-peer bullying in schools have held that the special relationship doctrine does not apply in the public school context, even if school attendance is compulsory."); Chambers v. N. Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 763 n.10 (S.D.N.Y. 2011) ("The consensus among the courts is that the 'special relationship' doctrine does not apply to the school setting.") (collecting cases). Accordingly, S.G.'s status as a

student does not impose a constitutional obligation on the District Defendants to protect her from private harm. As a result, Plaintiffs cannot rely on the special relationship exception as the basis for their substantive due process claims.

    2. <u>State-Created Danger Exception</u>

A state may violate a victim's due process rights "when its officers assist in creating or increasing the danger that the victim faced at the hands of a third party." <u>Matican</u>, 524 F.3d at 157. However, the state must have "taken an active role in the deprivation of a right," and passive conduct is not sufficient. <u>Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.</u>, 89 F. Supp. 3d 450, 458 (E.D.N.Y. 2015). In some circumstances, "'affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence.'" <u>Id.</u> at 459 (quoting <u>Okin v. Vill. of Cornwall-On-Hudson Police Dep't</u>, 577 F.3d 415, 429 (2d Cir. 2009)). Typically, in cases where the Second Circuit has applied this exception, "an agent of the State . . . was shown to have had a particular relationship with the perpetrator of the violence." <u>Campbell</u>, 904 F. Supp. 2d at 281. Further, "in the context of school bullying and harassment, courts have held that schools have no duty under the due process clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented." <u>Scruggs v.</u>

13

Meriden Bd. of Educ., No. 03-CV-2224, 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007) (collecting cases) (internal quotation marks omitted); Reid, 89 F. Supp. 3d at 459.

Here, the Complaint does not plausibly allege that the District Defendants encouraged or facilitated C.F.'s attack on S.G. The allegations do not suggest that the District Defendants engaged in any conduct that created or increased the risk of harm to S.G. And while the District Defendants are alleged to have had notice of threats and bullying by C.F. against S.G. that pre-dated the February 24 attack, the Complaint does not suggest that the District Defendants encouraged or sanctioned that attack in any way. See Campbell, 904 F. Supp. 2d at 281 (noting that the state-created danger exception requires "a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator and witnessing the violence"). Accordingly, there is no basis for applying the state-created danger exception to Plaintiffs' substantive due process claims against the District Defendants.

### 3. Shocks the Conscience

Even if Plaintiffs' claims fell within the narrow exceptions to DeShaney, the District Defendants' conduct does not, as a matter of law, rise to the level of conduct which shocks the conscience. The District Defendants' alleged failure to prevent C.F.'s attack of S.G. and to protect S.G. from C.F.'s assaultive

and threatening conduct does not rise to the level of "egregious" conduct "so 'brutal' and 'offensive to human dignity' as to shock the conscience." Smith, 298 F.3d at 173 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973)).

In their brief, Plaintiffs assert that the District Defendants had "actual knowledge of Defendant C.F.'s intention of attacking Plaintiff S.G. and took no action to prevent or curtail Defendant C.F.'s violent rampage." (Pls.' Br. at 12.) That assertion is not an accurate reflection of the Complaint. The Complaint alleges that the District Defendants took certain actions after being made aware of C.F.'s bullying and threats toward S.G., including Principal Butler "detaining" S.G. and C.F. in her conference room; assigning an aide to accompany S.G.; and removing C.F. from S.G.'s art class. (Compl. ¶¶ 35, 39, 40.) Even if the District Defendants' alleged actions (or lack thereof) in failing to prevent C.F.'s assaultive conduct amounted to negligence, it does not give rise to a federal substantive due process claim. See HB, 2012 WL 4477552, at *12 ("Making a bad decision or acting negligently is not the sort of conscience-shocking behavior that violates the Constitution. . . .") (internal quotation marks omitted); Musco Propane, LLP v. Town of Wolcott, No. 10-CV-1400, 2011 WL 3267756, at *5 (D. Conn. July 28, 2011) ("In determining whether a plaintiff has stated a claim for violation of federal substantive due process, the court is mindful that the Fourteenth

15

Amendment is not a 'font of tort law.'") (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)); Chambers, 815 F. Supp. 2d at 770-71 (school principal's decision in response to verbal harassment only to hold meeting between student and her harasser did not shock conscience).

To the extent that Plaintiffs argue that the District Defendants' conduct after the February 24 attack are sufficient to support a substantive due process claim (see Pls.' Br. at 13), the Court disagrees. In this respect, Plaintiffs complain that the District Defendants failed to call the police or an ambulance following the February 24 attack, failed to provide agreed-upon tutoring services, and failed to abide by the Order of Protection. (Compl. ¶¶ 43-46, 50-55.) Such conduct of the District Defendants does not shock the conscience and, therefore, is not actionable under the Due Process Clause. See HB, 2012 WL 4477552, at *12 ("Making a bad decision or acting negligently is not the sort of conscience-shocking behavior that violates the Constitution . . . .") (internal quotation marks omitted). Plaintiffs' reliance on Ewing v. Roslyn High School, No. 05-CV-1276, Docket Entry 43, an unpublished decision by this Court, is misplaced. In Ewing, the issue was whether the defendant school violated the plaintiff's substantive due process rights and whether its conduct shocked the conscience when the school's assistant principal "refused" to call an ambulance, deeming it unnecessary despite plaintiff's

16

substantial injuries. (Ewing, No. 05-CV-1276, Docket Entry 43, at 3-4.) Here, by contrast, Plaintiffs allege only that the District Defendants "failed" to call an ambulance. (Compl. ¶ 44.) Moreover, this Court did not hold that the school's conduct shocked the conscience; rather, this Court allowed the plaintiff's substantive due process claim to proceed to trial due to issues of fact related to the assistant principal's intent when he denied the plaintiff access to emergency medical care. (Ewing, No. 05-CV-1276, Docket Entry 43, at 9.)

Because the District Defendants' alleged conduct does not shock the conscience, Plaintiffs' substantive due process claims fail for this additional reason.

Plaintiffs fail to state a claim against the District Defendants for a violation of substantive due process based on a failure to supervise and a failure to protect. Accordingly, these claims are DISMISSED.

B. Failure to Follow Established Policy

As noted above, Plaintiffs also purport to assert a claim under § 1983 based on the District Defendants' failure to adhere to established policy, including the District's "Code of Conduct." (Compl. ¶¶ 80-96.) Violations of institutional policy or state law are not a basis for a § 1983 claim. See Holland v. City of N.Y., 197 F. Supp. 3d 529, 548-49 (S.D.N.Y. 2016) ("'[A] § 1983 claim brought in federal court is not the appropriate forum to urge

17

violations of prison regulations or state law.'") (quoting Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002)). The District Defendants' alleged violations of its own policies cannot establish a constitutional violation. Thus, Plaintiffs' claim for failure to adhere to established policy is DISMISSED. See id. (dismissing due process claim based on violation of prison policies).[1]

C. Brent and Donna Gingrich's § 1983 Claims

To the extent that Brent and Donna Gingrich purport to assert individual claims as S.G.'s parents under § 1983, those claims must also be dismissed. See Drain, 2015 WL 1014413, at *15 (dismissing parents' claims under § 1983). As parents, they do not have standing to bring individual claims based on the violation of their child's rights. See id. (collecting cases); HB, 2012 WL 4477552, at *19.

D. Municipal Liability

Plaintiffs also assert a § 1983 claim for municipal liability under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). (See Compl. ¶¶ 97-104.) Because Plaintiffs fails to plead a constitutional violation, their claim for municipal liability under Monell is DISMISSED. See Holland, 197 F. Supp. 3d at 552; Reid, 89 F. Supp.

---

[1] Because Plaintiffs' underlying claims are without merit, it is unnecessary for the Court to determine whether the individual District Defendants are entitled to qualified immunity.

18

3d at 460.

III. <u>Plaintiffs' State Law Claims</u>

In addition to the federal claims, Plaintiffs assert state law claims against the District Defendants for negligence and against C.F. for assault. (<u>See</u> Compl. ¶¶ 105-114; 115-121.) Under 28 U.S.C. § 1367(c)(3), where, as here, the district court has dismissed all of a plaintiff's federal claims, it may decline to exercise jurisdiction over supplemental state law claims. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Tops Mkts., Inc. v. Quality Mkts., Inc.</u>, 142 F.3d 90, 103 (2d Cir. 1998). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998). Pursuant to § 1367(c)(3), this Court, in its discretion, declines to exercise jurisdiction over Plaintiffs' state law claims, having dismissed all of their federal claims. <u>See</u> <u>id.</u> Accordingly, Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE.

<u>CONCLUSION</u>

For the above reasons, the Court GRANTS Defendants' motion to dismiss as to Plaintiffs' federal claims and declines to exercise jurisdiction over Plaintiffs' state law claims, which are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to mark this case CLOSED.

SO ORDERED.

Dated: June __20__, 2018          /s/ JOANNA SEYBERT_____
       Central Islip, New York    Joanna Seybert, U.S.D.J.